# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN L. RAY, : | |
|     **Plaintiff** : | |
| : | CIVIL NO. 3:19-CV-0994 |
| v. : | |
| : | (Judge Caputo) |
| FEDERAL BUREAU OF PRISONS, : | |
| NORTH EAST REGION, : | |
|     **Defendant** : | |

**M E M O R A N D U M**

On April 1, 2019, Steven L. Ray, an individual currently confined at the prison camp located at the Schuylkill Federal Correctional Complex (FCC Schuylkill) in Minersville, Pennsylvania, filed this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (ECF No. 1.) On June 28, 2019, the Court denied Mr. Ray's motion to proceed *in forma pauperis* based on his inmate account balance. The Court directed Mr. Ray to file the requisite filing fee in this matter, which he subsequently did. *See* ECF Nos. 19 and 21.

In his Complaint, Mr. Ray alleges the Bureau of Prisons (BOP) misclassified him on at least two occasions which led to his improper placement at high security facilities

---

[1] On June 10, 2019, the United States District Court for the Western District of New York transferred the matter to this Court after finding that Mr. Ray's Complaint set forth "violations of his constitutional rights arising from his security designation or classification by the Federal Bureau of Prisons and his placement in segregative confinement at the Federal Correctional Institution, Schuylkill Camp, located in Minersville, Pennsylvania" which is located in this district. ECF No. 12.

rather than prison camps more fitting for a minimum-security inmate like himself. Additionally, he states that after serving as a BOP confidential informant and receiving threats from other inmates, prison staff held him in protective custody for extended periods of time rather than immediately transferring him to another facility. Finally, he claims his conditions of confinement in protective custody violated the Eighth Amendment. The sole named defendant is the Federal Bureau of Prisons, Northeast Region. (ECF No. 1.)

The Court proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. For the reasons set forth below, the Complaint will be dismissed with leave to amend. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Also pending before the Court are several motions concerning Mr. Ray's quest for a reduction of his sentence and/or compassionate release as an "equitable" remedy for his past conditions of confinement and his substantial assistance to the BOP as a confidential informant. (ECF Nos. 23, 26, 28, 31, 32, 34 and 35.) As the Court is without jurisdiction to address these motions, they will be dismissed without prejudice. Alternatively, they will be withdrawn due to Mr. Ray's failure to comply with Pa. M.D. Local Rule 7.5.

I. **Standard of Review for Screening *Pro Se In Forma Pauperis* Complaints**

When a litigant seeks to proceed *in forma pauperis*, without payment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint. *See* 28 U.S.C. § 1915(e)(2)(B). Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint. *See*

28 U.S.C. § 1915A(a). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i) - (iii); 28 U.S.C. § 1915A(b)(1) – (2); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

A complaint is frivolous if it lacks an arguable basis either in law or fact. See *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 1832 - 33, 104 L.Ed.2d 338 (1989)). In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). See *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Under Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 - 11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949 - 50, 173 L.Ed.2d 868 (2009)). The court may also rely on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). A complaint is required to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

To test the sufficiency of the complaint, the court "must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "take note of

the elements a plaintiff must plead to state a claim." *Id.* (internal quotations and brackets omitted). Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth." *Id.* While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964). Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949).

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Yet, even a *pro se* plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

With these principles in mind, the Court sets forth the background to this litigation, as Plaintiff alleges it in his Complaint.

## II. Allegations of the Complaint

*Pro se* Plaintiff, Steven Ray, was convicted pursuant to guilty pleas in the United States District Court for the Western District of New York of mail fraud and forgery of United States Treasury checks, and obstruction of justice in connection with the sentencing on the mail fraud and forgery counts. *United States v. Ray*, 713 F. App'x 20 (2d Cir. 2017). On September 16, 2016, he received an 84-month sentence on the mail fraud and forgery plea and a concurrent 84-month sentence on the obstruction plea and ordered to pay restitution. (*Id*.) His projected release date is September 20, 2021.[2]

Following his guilty plea convictions, but prior to sentencing, Mr. Ray was housed as a presentenced inmate at the County Jail in Bath, New York. For 13 months he was "segregated" in a maximum-security section of that facility. (ECF No. 1 at 3.)

On October 1, 2016, the BOP transferred Mr. Ray to the "Youngstown PA CCA Maximum Detention Facility" where he was again housed with violent criminals and his privileges were "greatly restricted." (*Id*.) A month later he was transferred to the Allenwood Federal Correctional Complex in Allenwood, Pennsylvania. Much to his disagreement, the BOP placed him at FCI Allenwood Low, a low security federal correctional institution, rather than the prison camp located at the same compound. He served 13 months at this facility where his "conditions were substantially inferior of those enjoy[ed] at the prison camp." (*Id*.) Mr. Ray believes the BOP committed another

---

[2] *See* https://www.bop.gov/inmateloc/ (search: Steven Ray; last visited Nov. 5, 2019).

"colossal blunder" by placing him in solitary confinement for 40 days where he was "stripped of all human rights" and forced to endure "the harshest living conditions" as a means of "reward[ing] a cooperating inmate". (*Id*.)

When the BOP recognized its misclassification of Mr. Ray, instead of sending him to a prison camp, they sent him to the Brooklyn Metropolitan Detention Center (MDC Brooklyn), in Brooklyn, New York. This "vertical" facility had "virtually no recreation area" or programing like that offered at prison camps. (*Id*. at 4.)

In November 2017, Mr. Ray began working with MDC Brooklyn prison officials to locate cellphones secreted within the facility. (*Id*.) Mr. Ray had five different jobs within the facility "and had almost full access to the interior and exterior [of the] facility." (*Id*. at 5.) In January 2018, Mr. Ray "was responsible for the confiscation of 15 phones and 11 arrests, along with other contraband." (*Id*.) The following month Plaintiff was responsible for the discovery of 10 additional cell phones and numerous arrests. In March 2018, MDC Brooklyn officials requested a transfer for Mr. Ray due his "substantial assistance with SIS agents" and "increased inmate awareness." (*Id*. at 5.) In April 2018, Mr. Ray began experiencing "confrontations" with other inmates. (*Id*. at 6.) Mr. Ray learned the BOP Denied his transfer on May 1, 2018. (*Id*.) In the following weeks Mr. Ray encountered inmates who verbally threatened with harm if they learned he was working with the facility's security staff. (*Id*. at 7.) Mr. Ray notified prison staff each time he was threatened. (*Id*.) Staff devised a plan to plant a cell phone charger in Mr. Ray's belongings as a means to remove him from the general population and place him in protective custody. (*Id*.)

On June 15, 2018, after staff contacted the institution's Special Investigative Supervisor (SIS), staff placed Mr. Ray in protective custody for a threat assessment. (*Id.* at 8.) The investigation was closed in July and institutional "security procedures were changed based on [Mr. Ray's] present and past recommendations to prevent a further problem." (*Id.* at 8.) In August, the Warden advised Mr. Ray "Lt. Pope was sending [him] back to the unit." (*Id.*) The Warden said this could not happen and that "if the CO came for [him] to tell them what happened." (*Id.*) After following the Warden's advice, Mr. Ray received "a 306 shot failure to program." (*Id.*) Later that month, the same thing happened again and Mr. Ray received another "shot". At that time Mr. Ray was not in protective custody but held in the segregation unit on "an open threat". (*Id.* at 9.) While in the segregation unit, other inmates yelled threats at Mr. Ray. (*Id.*) Inmates would leave threatening messages in the recreational "cage" for Mr. Ray. (*Id.* at 10.) A dead mouse with a noose around its neck and the notation "die rat," was left outside of Mr. Ray's cell. (*Id.*)

In September 2018, the Warden advised Mr. Ray that staff was preparing his transfer and that he would sign it. (*Id.* at 11.) After 80 days in solitary confinement, Mr. Ray experienced feeling of depression, weight loss and extreme headaches. (*Id.*) His cell was cramped. He had no desk and was forced to eat his meals on the floor. Plumbing problems also existed in the unit resulting in water to his cell being turned off for hours at a time. At some point BOP staff halted his ability to work outside his cell. (*Id.*) Mr. Ray states his "security custody level [did not] warrant [this type of] environment." (*Id.* at 12.)

In late October 2018, the BOP reinstituted Mr. Ray's work privileges. (*Id.* at 13.) Although Mr. Ray served 150 days in the secure housing unit, staff continued, albeit

unsuccessfully, to obtain a transfer for him. (*Id.*)  Mr. Ray felt "used by MDC Brooklyn to solve a problem." (*Id.*)  In mid-November, now six month in the segregation unit, Mr. Ray learned his transfer was denied. (*Id.* at 14.)  After spending 260 days in solitary confinement, on February 25, 2019, the BOP transferred Mr. Ray to the prison camp at FCC Schuylkill, in Minersville, Pennsylvania.  (*Id.* at 1 and 21.)

Mr. Rays seeks his "immediate and irrevocable release" and monetary compensation for the BOP's past failure to properly house him in facilities commensurate with this security classification and his prolonged solitary confinement with little to no amenities, programming, or recreation after acting as a BOP confidential informant. (*Id.* at 20.)

### III. Discussion

#### A. Sovereign Immunity

A *Bivens* civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the same standards applicable to a 42 U.S.C. § 1983 civil rights action.  See *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992).  To state a claim under *Bivens*, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See *Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

Mr. Ray names the BOP, Northeast Region, as the sole defendant in this action. The BOP is a federal agency.  Mr. Ray cannot recover damages against the BOP for its alleged violation of his constitutional rights.  See *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72, 122 S.Ct. 515, 522, 151 L.Ed.2d 456 (2001) (holding that a *Bivens* action may

not be maintained against the federal government or its agencies, including the BOP). Additionally, unless waived, sovereign immunity shields federal agencies from suit. *See Hatten v. Bledsoe*, No. 19-1378, 2019 WL 3714972, at *3 (3d Cir. Aug. 7, 2019) (citing *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994)). Accordingly, Mr. Ray's *Bivens* claim against the "Bureau of Prisons, Northeast Region" will be dismissed with prejudice.

### B. Mr. Ray's Complaint Fails to Comport with Fed. R. Civ. P. 10(b) and 18

Federal Rule of Civil Procedure 10(b) requires,

> A party must state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances … If doing so would promote clarity, each claim founded on a separate transaction or occurrence --- … --- must be stated in a separate count …

Rule 18 of the Federal Rule of Civil Procedure governs the joinder of claims. Rule 18(a) provides "A party asserting a claim … may join, as independent or alternative claims, as many claims as it has against an opposing party."

Mr. Ray's Complaint does not comply with either Rule 10(b) or Rule 18. Mr. Ray's twenty-page Complaint reads like a daily journal that spans years of his confinement at various facilities. Given this buckshot approach to his pleading, it is difficult at best to determine the true nature of Mr. Ray's claims and whom he seeks to hold responsible for violating his constitutional rights.[3] Nonetheless, accepting the allegations of the

---

[3] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.")

Complaint as true, as we must, Mr. Ray alleges that BOP officials improperly classified him on several occasions resulting in his incarceration at maximum security facilities or housing units beyond his security needs and under conditions of confinement that violated the Eighth Amendment. However, the specifics of each claim, i.e. those he seeks to hold responsible for their alleged personal involvement in each claim is difficult, if not impossible, to glean from his current Complaint. What is clear is that the joinder of his various claims in a single action violates Fed. R. Civ. P. 18. Mr. Ray's Complaint involves claims that cross at least three judicial districts: (1) the Western District of New York (events at the county jail in Bath, N.Y.); (2) the Middle District of Pennsylvania (FCI Allenwood Low);[4] and (3) the Eastern District of New York (events at MDC Brooklyn). Accordingly, the Court will dismiss his Complaint for violating Fed. R. Civ. P. 10 and 18.

### C. Mr. Ray's Failure to State a Claim Concerning his Placement at FCI Allenwood Low

It is well-settled that a prisoner has no right or legally enforceable expectation to be assigned to, or to remain at, any prison. Pursuant to 18 U.S.C. § 3621(b), the BOP may confine a prisoner in any facility and transfer him at any time. *McKune v. Lile*, 536 U.S. 24, 39, 122 S.Ct. 2017, 2027-28, 153 L.Ed.2d 47 (2002) ("It is well established that the decision where to house inmates is at the core of prison administrators' expertise."). Similarly, an inmate does not have a protected liberty interest arising from the Due Process Clause to be assigned to a particular custody level, security classification, or place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22, 125 S.Ct. 2384,

---

[4] Mr. Ray does not make any averments concerning his conditions of confinement at his current location, the prison camp at FCC Schuylkill.

2393-94, 162 L.Ed.2d 174 (2005) (explaining that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (an inmate does not have a due process right to remain at or be transferred to any prison); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (transfer among correctional facilities does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules"). Likewise, inmates do not have a constitutionally protected interest in their custodial classification once assigned to a unit, even where the inmate alleges that the classification was erroneous. *See Levi v. Ebbert*, 353 F. App'x 681, 682 (3d Cir. 2009) ("[P]risoners have no constitutional right to a particular classification."); *see also Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir.1995) (a prisoner does not have a basis for a civil rights complaint simply because he disagrees with a classification decision).

Based upon the above legal principles, even if Mr. Ray had identified an individual responsible for his alleged improper classification to FCC Allenwood's prison camp instead of FCI Allenwood Low, his claim would be subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as he has no constitutional right or liberty interest in his placement in any particular facility or his classification. Thus, Mr. Ray will not be permitted to file an amended complaint as to these claims as it would be futile to do so.

### D. Mr. Ray Fails to State a Claim Concerning his Conditions of Confinement at FCI Allenwood Low

The Eighth Amendment is violated by the conditions of an inmate's confinement when there is an "unnecessary and wanton infliction of pain" by prison officials, "whether

that conduct occurs in connection with establishing conditions of confinement [or] supplying medical needs." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). The conditions of imprisonment may violate the Eighth Amendment if they, "alone or in combination, … deprive inmates of the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). These necessities include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). The Constitution "does not mandate comfortable prisons." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (internal quotation marks and citation omitted). "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*.

The United States Court of Appeals for the Third Circuit has interpreted the "deprivation of basic human needs" standard as requiring proof of two elements: (1) "a sufficiently serious objective deprivation," and (2) "that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Tillman v. Lebanon Cnty Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Deliberate indifference requires that a prison official acted with actual awareness of excessive risks to the plaintiff's safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

With respect to his conditions of confinement claim at FCI Allenwood Low, Mr. Ray claims prison officials housed him in conditions "substantially inferior" to those enjoyed at

a prison camp. (ECF No. 1 at 3.) Mr. Ray does not provide any facts concerning his conditions of confinement at FCI Allenwood Low or how staff were deliberately indifferent to his safety. Accordingly, he will be permitted to file an amended complaint as to this claim.

### E. Mr. Ray Fails to State a Claim Based on his Forty Days Solitary Confinement in FCI Allenwood Low

The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall ...deprive any person of life, liberty, or property, without due process of law …" In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. See *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005); *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Liberty interests may arise from the Due Process Clause itself, or from an expectation or interest created by prison policies. *Wilkinson,* 545 U.S. at 221, 125 S.Ct. at 2393 (citations omitted).

The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). The determination of what is "atypical and significant" is based on the range of conditions an inmate "may reasonably expect to encounter as a result of his or her conviction." *Asquith v. Dep't of Corr.*, 186 F.3d 407,

412 (3d Cir. 1999). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) *(quoting Sandin)*. "Generally, placement in administrative segregation will not create a liberty interest." *Riley v. Carroll*, 200 F. App'x 157, 158 (3d Cir. 2006) (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002)). An inmate's placement in the BOP's SHU, in its self, does not impose hardships upon a prisoner that are "atypical and significant" due to the more austere conditions of confinement in that unit. *See Mackey v. Smith*, 249 F. App'x 953, 954 n. 4 (3d Cir. 2007)*; see also Milhouse v. Bledsoe*, Civ. No. 1:CV-09-01953, 2011 WL 332417, at *5 (M.D. Pa. 2011) (collecting cases). Moreover, The United States Court of Appeals for the Third Circuit has "concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life." *See Torrealba v. Hogsten*, No. 3:CV-06-0108, 2009 WL 3242293, at *9 (M.D. Pa. Oct. 8, 2009); *see also Wilson v. Hogsten*, 269 F. App'x 193, 195-96 (3d Cir. 2008) (concluding that a prisoner's placement in administrative detention and an extended stay in the SHU do not constitute atypical and significant hardships).

Liberally construing Mr. Ray's Complaint, the Court finds it to raise a claim that unidentified FCI Allenwood Low staff violated his due process rights under the Fourteenth Amendment by placing him solitary confinement, or the Special Housing Unit (SHU), for forty days. (ECF No. 1 at 3.) Because Mr. Ray does not identify the individuals responsible for his SHU placement or the nature of his confinement there (administrative

or disciplinary) or the specific conditions of his confinement which would demonstrate they were atypical and implicated a protected liberty interest, he will be permitted to file an amended complaint as to this claim.

### F. Habeas Relief – Release from Confinement

As relief, Mr. Ray requests, in part, his release from prison. (ECF No. 1.) Release from detention is not available relief in a civil rights action. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (holding that habeas corpus is the exclusive remedy for a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release). Accordingly, this action, even if successful, would not entitle Plaintiff to release.

As for Mr. Ray's motion for a reduction of sentence or compassionate release pursuant to Fed. R. Crim P. 35 and the First Step Act (ECF Nos. 23, 26, and 31), these motions will be dismissed without prejudice as he must bring them before the sentencing court, the United States District Court for the Western District of New York. *See United States v. Friedland*, 83 F.3d 1531 (3d Cir. 1996) (Rule 35(b) more appropriately brought via § 2255 petition, not § 2241 and only AUSA in sentencing district could file or authorize others by his consent to file a Rule 35(b) motion).

### G. Leave to Amend

As stated, Mr. Ray's entire *Bivens* Complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) due to his failure to name a proper defendant. Likewise, Mr. Ray's improper housing and classification claims concerning events that transpired at FCI

Allenwood Low are also subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will grant Mr. Ray twenty-one days to file an amended complaint as to his due process and conditions of confinement claim related to his forty-day placement in FCI Allenwood Low's SHU. As the Court does not have jurisdiction concerning Mr. Ray's claims concerning events that transpired in New York (i.e. his conditions of confinement claims related to his incarceration at the Bath County Jail and MDC Brooklyn), and there is a three-year statute of limitations on these claims, they will be dismissed without prejudice to his right to file a *Bivens* action in the appropriate federal district.

If Mr. Ray decides to file an amended complaint in this action, he must clearly label it, on the face of the document, "Amended Complaint." It must bear the docket number assigned to this case and must be retyped (double spaced) or legibly rewritten (double spaced) in its entirety, on the court-approved form.[5] In addition, any amended complaint filed by Mr. Ray supersedes (replaces) the original complaint already filed. It must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1; *see also W. Run Student Hous. Assocs. v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013).

Additionally, the Court cautions Mr. Ray that his amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in individually numbered paragraphs in short, concise, and simple statements. *Id.* and Fed. R. Civ. P. 10(b). The allegations in the amended complaint may not be conclusory.

---

[5] In the "Caption" section of the amended complaint, Plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.

Instead, Plaintiff must plead facts to show how each named defendant was personally involved with or responsible for the alleged constitutional violation for his assignment to the SHU or his SHU conditions of confinement. In other words, the allegations should be specific enough as to time and place of the alleged violations and must identify the specific person or persons responsible for the deprivation of his constitutional rights and what each defendant did to harm him. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948.

If Plaintiff fails to file an amended complaint on the Court's form within twenty-one days, and in compliance with the Court's instructions, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

Finally, the Court reminds Plaintiff of his obligation to advise the Court of any change of address. *See* M.D. Pa. LR 83.18. His failure to do so will be deemed as his abandonment of the lawsuit resulting in the dismissal of the action.

An appropriate order follows.

          /s/ A. Richard Caputo
          **A. RICHARD CAPUTO**
          **United States District Judge**

**Dated: November 5, 2019**